IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRIAN OTIENO                                                    PLAINTIFF

vs.                          CASE NO. 5:26-CV-05105-TLB

JUDGE DIANE B. WARREN, et al.                                   DEFENDANTS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On May 11, 2026, Chief United States District Judge Timothy L. Brooks referred this matter (ECF No. 7) to the undersigned for consideration of Plaintiff's Motion for Service of his Complaint on Defendants. (ECF No. 4). Plaintiff's Motion to proceed informa pauperis has been granted by separate order. (ECF No. 8).

1.      "[F]ederal courts are courts of limited jurisdiction[.]" *United States v. Afremov*, 611 F.3d 970, 975 (8th Cir. 2010). District courts have "a special obligation to consider whether it has subject matter jurisdiction in every case." *Hart v. United States,* 630 F.3d 1085, 1089 (8th Cir. 2011). "This obligation includes the concomitant responsibility 'to consider *sua sponte* [the court's subject matter] jurisdiction ... where ... [the Court] believe[s] that jurisdiction may be lacking.'" *Id.* (alterations and omissions in original) (quoting *Clark v. Baka,* 593 F.3d 712, 714 (8th Cir. 2010) (per curiam)). Thus, the undersigned *sua sponte* addresses whether the District Court properly exercises jurisdiction over this matter, and finding that it does not, recommends this case be **DISMISSED.**

2.      Plaintiff's Complaint was filed on May 11, 2026. (ECF No. 2). Plaintiff named as Defendants Washington County, Arkansas (*Monell* claims); Diane B. Warren, Circuit Judge, Washington County Fourth Judicial District, Division 8 (individual and official capacities); Makenzie Arnold (attorney for Gabrielle Lewis, alleged to have acted under color of state law); Brian

1

D. Rabal (attorney ad litem for the minor children, alleged to have been a state actor); J. Benjamin Crabtree (one of Plaintiff's former lawyers); Hugh Brock Showalter (one of Plaintiff's former lawyers); Aundrea Stone Hanna (one of Plaintiff's former lawyers); Christopher Brian Birch (one of Plaintiff's former lawyers); Gabrielle Nicole Lewis (mother of Plaintiff's minor children); Charles Moore (Lewis' husband); and the Arkansas Office of Child Support Enforcement (claims for prospective injunctive relief).

Proceeding pursuant to 42 U.S.C. § 1983 and the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, *et seq.*, Plaintiff alleges deprivation of due process related to his fundamental liberty interest in a parent-child relationship (Count I pled against all Defendants); deprivation of a right to a fair hearing before an impartial tribunal (Count II against Judge Warren); a violation of equal protection and a claim of gender discrimination (Count III against Judge Warren); First Amendment Retaliation (Count IV against Judge Warren); coordinated fraud upon the Court on April 8, 2026 (relating to an agreed order) (Count V against Defendants Arnold, Rabal, Crabtree, Judge Warren and Washington County); denial of access to the courts and coordinated obstruction (Count VI against all Defendants); violations of the Fair Credit Reporting Act (Count VII against the Arkansas Office of Child Support Enforcement); fraud upon the Court and unjust enrichment-perjury based on constitutional deprivation (Count VIII against Defendant Gabrielle Lewis); deprivation of due process related to continued license suspension enforcement by the Arkansas Office of Child Support Enforcement (Count IX against Child Support Office); imprisonment and license revocation without an ability-to-pay determination (Count X against Judge Warren, Child Support Office and Washington County); negligent supervision of the minor children (Count XI pled against Gabrielle Lewis and Charles Moore); and attorney misconduct, legal malpractice and breach of fiduciary duty

under color of state law (Count XII against attorneys Showalter, Hanna, and Birch).

In his seventy-four (74) page Complaint, Plaintiff – who is the father of two minor children – complains he is the victim of a "fraudulent child support order" that has "destroyed the Plaintiff's finances, career, parental relationship, and physical and mental health." (ECF No. 2, p. 2). A very brief summary of allegations includes: Plaintiff says that Judge Warren entered an Order of Paternity, Custody and Child Support on January 20, 2023, which – among other things – established Plaintiff's monthly child support obligation at $295 per week. (ECF No. 2, pp. 32-33). Plaintiff complains that the child support was calculated using a Child Support Worksheet completed by Defendant Lewis (the children's mother) that was fraudulent; that Lewis perjured herself in Court; and that the child support obligation has never been revisited even though the information Lewis provided has been established as fraudulent, and Plaintiff's income has declined. (ECF No. 2., p. 33). Plaintiff says he cannot pay the child support and Judge Warren improperly suspended his driver's license, vehicle registration, concealed handgun license and professional licenses as of January 20, 2025, due to his child support arrearage which has, in turn, caused him ruin. (ECF No. 2, p. 62). Plaintiff articulates at least "twenty-five [] instances" or complaints about Judge Warren's handling of his state court case and further complains that Judge Warren should recuse, and venue should be transferred to Pulaski County, Arkansas, where the minor children now reside and where one was allegedly sexually assaulted by another minor child. (ECF No. 2, pp. 34-44). Plaintiff makes multiple complaints against the multiple lawyers representing him, and complains that his disciplinary complaints against these lawyers were all summarily dismissed without adjudication. Plaintiff makes multiple complaints about the children's mother and her husband, including (as noted) complaints that one or more of the minor children were injured while in their mother's custody. Plaintiff

complains that the children's ad litem – following discharge by Judge Warren – demanded payment from Plaintiff "for an investigation he never completed, a report he never filed, and duties he never performed." (ECF No. 2, p. 44). This brief summary addresses key claims, but does not include all of Plaintiff's allegations, complaints and other citations/exhibits.

3.      Plaintiff's allegations have arisen from a domestic relations matter styled *Brian M. Otieno v. Gabby N. Lewis,* Case No. 72DR-21-1788, in Washington County Circuit Court. *See* https://caseinfo.arcourts.gov/opad/case/72DR-21-1788. According to public documents, the case was initiated on December 3, 2021, and remains open; multiple pleadings have been filed during 2026, and on the same date Plaintiff filed this federal action, he filed a Motion for Judge Warren to recuse and for a change of venue. Five (5) orders were entered by Judge Warren as recently as Tuesday, May 12, 2026. Multiple pleadings have been filed by Plaintiff during the last two days – May 13-14 – and earlier today, Judge Warren ruled that Plaintiff will need to seek leave before he files further pleadings. https://caseinfo.arcourts.gov/opad/case/72DR-21-1788. Just a cursory review supports that Plaintiff has duplicated many of his state court complaints in his new federal action.

4.      Mindful of Plaintiff's plaintive frustrations with the judicial system, federal courts lack jurisdiction over domestic relation matters such as the issuance of divorce, allowance of alimony and child custody; this is known as the domestic relations exception to federal jurisdiction which has been recognized for more than 180 years. *Ankenbrandt v. Richards,* 504 U.S. 689, 703 (1992) (distinguishing a family tort claim from a child custody claim). State courts have exclusive jurisdiction over these matters. *Id.*, at 703-704. While Plaintiff tries to couch his allegations as violative of federal law, Plaintiff centrally complains about how this case has disrupted his relationship with his children and upended his life; he complains vigorously about the state court

judge, his child support obligations, the penalties imposed upon him due to his child support arrearage, his state court attorneys, parenting by the children's mother, and a potential venue transfer. A federal court generally cannot order relief in these circumstances.

5.      And while Plaintiff understandably disagrees with Judge Warren's decisions, his complaints against Judge Warren are likely immune from liability. Few doctrines are more solidly established at common law than the immunity of judges for liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray,* 386 U.S. 547, 553-54 (1967). The Supreme Court "has pronounced and followed this doctrine of the common law for more than a century." *Cleavinger v. Saxner,* 474 U.S. 193, 199 (1985)(citation omitted).  Judicial immunity is immunity from suit and is grounded in a "general principle of the highest importance" that "a judicial officer, in exercising the authority vested in [her], shall be free to act upon [her] own convictions, without apprehension of personal consequences to [herself]." *Mireles v. Waco*, 502 U.S. 9, 10 (1991), quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347 (1871).

Judicial immunity is only overcome in two narrow situations: (1) if the challenged act is non-judicial; and (2) if the action, although judicial in nature, was taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Moreover, "[a] judge will not be deprived of immunity because the action [she] took was in error, was done maliciously, or was in excess of [her] authority; rather, [she] will be subject to liability only when [she] has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)(citations omitted); *Nolan v. Campbell,* 369 F. Supp. 1032 (E.D. Mo. 1974) (judicial immunity applies to actions brought under 42 U.S.C. §§ 1983 & 1981).  Allegations of malice or corruption do not defeat judicial immunity. *Stump,* 435 U.S. at 355-56.

The lion's share of Plaintiff's complaints are about the actions of Judge Warren (alleged in both her official and individual capacities) but when examined, the factual allegations relate primarily (if not exclusively) to rulings Judge Warren made against Plaintiff and what Plaintiff describes as her judicial "bias" and "deep-seated favoritism" which "worked against him." (ECF No. 2). Plaintiff complains that Judge Warren signed agreed orders after Plaintiff had discharged his counsel; signed orders without hearings; signed orders relying upon Plaintiff's ex-wife's perjured testimony; limited or denied Plaintiff's right to fully cross-examine a witness and/or make opening statements; and that Judge Warren engaged in ex parte communications with counsel. Notably, these are only some, and not nearly all of Plaintiff's allegations but suffice it to say, the actions described – presiding over hearings, controlling her courtroom, ruling on motions, considering evidence, making findings and entering judgments – are judicial actions ordinarily and routinely performed by a judge and Plaintiff's disagreement with them do not render them non-judicial. *Stump,* 453 U.S. at 359. "Judges performing judicial functions enjoy absolute immunity from § 1983 liability." *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). Recognizing that Plaintiff believes his domestic relations case should be transferred from Washington County to Pulaski County Circuit Court where the children reside, the undersigned reminds Plaintiff that venue is distinct from jurisdiction. Plaintiff does not make any credible complaint that Judge Warren lacked jurisdiction, as a Circuit Judge under Arkansas law, to preside over the divorce/custody action Plaintiff initiated in 2021 and which remains open in Washington County, Arkansas. Thus, from an analysis of the pleadings, the undersigned confidently predicts Judge Warren would be entitled to judicial immunity and dismissal.

6.    With respect to Plaintiff's claims against the Arkansas Office of Child Support

Enforcement (Office), Plaintiff has yet another roadblock.  Under the Eleventh Amendment, the State of Arkansas enjoys sovereign immunity from claims for damages arising from alleged constitutional violations. *See, e.g., Bunch v. Univ. of Ark. Bd. of Trustees,* 863 F.3d 1062, 1067 (8th Cir. 2017).  And even if not immune, state agencies are not "persons" subject to suit under § 1983. *McLean v. Gordon,* 548 F.3d 613, 618 (8th Cir. 2008). Thus, the Office – a division within the Department of Finance and Administration – cannot be sued under § 1983 and these claims must be dismissed.  *See Bailey v. State of Arkansas Office of Child Support Enforcement,* 2026 WL 540380 (W.D. Ark. Feb. 26, 2026).

With respect to Plaintiff's federal claims against the Office pursuant to the Fair Credit Reporting Act, and assuming (without deciding) that the State has waived immunity for these claims, Plaintiff's allegations as pled are conclusory and wholly insufficient. Plaintiff complains in Count VII that the Office reported Judge Warren's child support order/obligation as a debt in error because the Order was "based on" "fraudulent" childcare expense and the Office thereafter "failed to conduct a reasonable investigation and failed to correct the inaccurate information" contained in Judge Warren's Order.  (ECF No. 2, p. 59). The flaw here is that Plaintiff has not pled any facts from which it could be concluded that the Office took any action which could be considered malicious or willfully noncompliant when simply reporting Judge Warren's order. In fact, at least one of Plaintiff's exhibits to his Complaint (*see* ECF No. 2-3) is to the contrary. Plaintiff has not alleged the Office "intentionally misled" or "concealed information" in conscious disregard for the rights of Plaintiff. *Reed v. Experian Information Solutions, Inc.*, 321 F. Supp. 2d 1109 (D. Minn. 2004). Moreover, Plaintiff's allegations of negligence against the Office are not cognizable under the Act. *Id.*

Plaintiff's Fair Credit Reporting Act claims are either barred by sovereign immunity or subject to dismissal under *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). ("Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

7.      Turning to Plaintiff's complaints about his former lawyers and the children's former ad litem, these claims do not implicate issues of a federal constitutional dimension. Plaintiff's allegations of "attorney misconduct, legal malpractice and breach of fiduciary duty" are essentially state malpractice claims and there is no factual or legal basis for this Court's exercise of federal question jurisdiction over them pursuant to 28 U.S.C. § 1331. Simply saying these attorneys were "state actors" for purposes of § 1983 does not make them so. A § 1983 complaint must allege that each defendant, acting under color of state law, deprived plaintiff of "rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *DuBose v. Kelly*, 187 F.3d 999 (8th Cir. 1999). Private actors may be liable under §1983 only where they are a willing participant in joint action with the State or its agents. *Miller v. Compton*, 122 F.3d 1094 (8th Cir. 1997). Plaintiff has not sufficiently pled that his attorneys or the former ad litem reached "a mutual understanding, or a meeting of the minds" with any state actor – either Judge Warren or the Office of Child Support Enforcement – to the detriment of Plaintiff. Further problematic for Plaintiff's §1983 case is that both Judge Warren and the Office are likely immune from suit.

Examining 28 U.S.C. §1332, the Court similarly lacks a basis for exercising diversity jurisdiction as it exists only "where the matter in controversy exceeds the sum or value of $75,000

... and is between ... citizens of different states." 28 U.S.C. § 1332(a). Citizenship is determined by the facts as they exist at the time a lawsuit is filed and complete diversity is required in order for the Court to exercise jurisdiction, meaning no defendant may hold citizenship in the same state where any plaintiff holds citizenship. *Wagstaff & Carmell, LLP v. Lewis*, 40 F.4th 830, 839 (8th Cir. 2022). Here, the Complaint establishes that every identified party is a citizen of Arkansas.

Without trying to summarize all of Plaintiff's allegations, he is upset with the quality of work and/or the lack of work performed by his former attorneys on his behalf; he is upset with those attorneys' responsiveness, their failures to subpoena witnesses, and their accounting of his fees and the failure to return unearned fees, among other things. (ECF No. 2). Plaintiff is further frustrated that the Arkansas Supreme Court Office of Professional Conduct closed his complaints about these attorneys allegedly without analysis or explanation. While Plaintiff is free to bring malpractice claims against these lawyers in state court, he has not established any basis for this Court's jurisdiction over these individual defendants or his claims against them.

8.      The same analysis is applicable to Counts VIII and XI against the children's mother and step-father, prompting the same result. Gabrielle Lewis and Charles Moore are not state actors for purposes of § 1983 who have acted to deprive Plaintiff of his constitutional rights but are simply individuals – private actors – involved in the ongoing domestic relations litigation, one because she is the children's mother and the other who is their step-father. This Court has no basis for exercising federal question jurisdiction over them under § 1331. And because they are both citizens of Arkansas along with Plaintiff, there is no basis for exercising jurisdiction under 28 U.S.C. § 1332.

9.      Plaintiff's allegations against Washington County, Arkansas, also fail. Counties may be liable for deprivations of constitutional rights, but only when the deprivation was caused by the

"execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658 (1978). Here, Plaintiff complains about the filing practices of the Washington County Circuit Court Clerk's Office (Clerk's Office), saying he received "differential treatment of [his] filings and the acceptance and simultaneous processing of the April 8, 2026, dual filing without any verification of the Plaintiff's consent." (ECF No. 2, pp. 15-16). Plaintiff has failed to illustrate a constitutional injury or that this injury was caused by a Washington County policy or custom as required by *Monell.* In other words, Plaintiff's allegations about the filing of an agreed order in the Clerk's Office includes no identification of a policy or custom on the part of Washington County, Arkansas, which unconstitutionally deprived Plaintiff of any of his constitutionally protected rights.

10.     And even if this Court could properly exercise jurisdiction, it would abstain from doing so pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), as applied by *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432 (1982). The Supreme Court has made clear that lower federal courts must decline to hear challenges to pending state actions involving important state interests. *See Moore v. Sims*, 442 U.S. 415, 435 (1979) ("[f]amily relations are a traditional area of state concern."); *Lewis v. Seventh Cir. Ct. - S.D. Unified Jud. Sys.,* 2018 WL 7247048, at *3 (D.S.D. Nov. 28, 2018) (explaining that domestic relations is "a traditional area of state concern where federal abstention is particularly important").

Here, there have been ongoing domestic proceedings in Washington County Circuit Court since 2021. These proceedings implicate important state interests (custody and support of two minor children) and those state proceedings provide an adequate opportunity to raise all manner of challenges, including constitutional ones. *Aaron v. Target Corp*., 357 F.3d 768, 774 (8th Cir. 2004).

It is clear Plaintiff understands this ability – the public docket reflects that he has raised many constitutional issues in his state case before Judge Warren. The undersigned further observes that the timing of Plaintiff's Complaint – alleging malfeasance on the part of Judge Warren – suggests a direct attempt to obstruct or interfere with her recent Orders in his still on-going domestic relations case. "[A]s a matter of policy and comity, these local problems should be decided in state court." *Overman v. United States*, 563 F.2d 1287 (8th Cir. 1977).

11.     Even if Plaintiff could jump over all of these hurdles, the *Rooker-Feldman*[1] doctrine would preclude this Court's exercise of jurisdiction. The *Rooker–Feldman* doctrine "applies to cases brought by state-court losers complaining of injuries caused by state-court judgments ... and inviting review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp*., 544 U.S. 280, 284, 287 (2005).  Here, it appears the state court previously adjudicated the rights and obligations of Plaintiff (and the child's mother) with respect to custody and visitation with their minor children; the ongoing issue appears to be child support, a child support arrearage, and a modification of support.  Although Plaintiff does not list modification of the state court orders in his "Prayer for Relief," (ECF No. 2,. p. 72), thus arguing *Rooker-Feldman* is inapplicable, the four corners of Plaintiff's Complaint illustrate his multiple ongoing complaints about the order of child support and the restrictions on his personal freedoms such as suspension of his driver's license. While the state court may possess the power to amend its orders and judgments regarding child support, this federal court does not. *Lemonds v. St. Louis Cnty*, 222 F.3d 488, 492 (8th Cir. 2000). Plaintiff's prayer for an award of damages does not persuade the undersigned that *Rooker-Feldman*

---

[1] *D.C. Ct. of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923).

is inapplicable.

12.    For all of these reasons, the undersigned recommends that Plaintiff's Motion for Service (ECF No. 4) be **DENIED.**   It is further **RECOMMENDED** that Plaintiff's Complaint be **DISMISSED**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the District Court.**

RECOMMENDED this 15th day of May 2026.

_Christy Comstock_

CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE